(Superior Court of Cincinnati.)
Special Term, 1901.

CLARA B. FLETCHER et al. v. FREDERICK G. HUNTINGTON et al.

(1.) An unassigned right of dower is not a freehold estate, the legal title of which passes to the assignee of the dowager.

(2.) Such unassigned right of dower is, however, a vested interest, transferable to a stranger to the title before being set off by metes and bounds; and the interest held by the assignee of the dowager is an enforceable equity.

(3.) But in balancing equities, that of a surity of the dowager, in whose possession he left the property, will prevail over that of a subsequent assignee for the benefit of creditors.

(Right of dowager to transfer unassigned dower interest to stranger—See opinion of Circuit Court of Allen Co., by Mooney, J., in Weyer v. Sager, 21 C. C., —)

---

JACKSON, J.

The petition herein sets forth substantially the following:

That on and prior to the 11th day of February, 1896, the plaintiffs, Clara B. Fletcher and Florence F. English, together with one Mary L. Huntington, since deceased, were seized as tenants in common in equal shares of nine certain parcels of land in the city of Cincinnati, which land is especially described in the petition; that Frederick G. Huntington was the husband of said Mary L. Huntington, and the owner of an inchoate right of dower in her undivided one-third of said premises; that on the 11th of February, 1896, said Frederick G. Huntington procured a loan in the sum of $20,000 from the Mutual Life Insurance Company, and that for the purpose of assisting said Huntington in procuring said loan, and for no other purpose, his wife and her co-tenants executed jointly with him a promissory note in the sum of $20,000, and secured same by a mortgage upon certain parcels of the land hereinbefore referred to.

The petition further states that said Mary L. Huntington died intestate the 2d day of October, 1897, and there was no partition of any of said premises, nor any assignment of dower to the defendant, Huntington; nor have any proceedings in partition or for assignment of dower been instituted, and that there remains upon said mortgage the sum of $18,000 as now due and payable.

The petition further states that immediately upon the decease of said Mary L. Huntington, plaintiffs entered into possession of said land, maintaining, repairing and making improvements upon the same, collecting rents and pay-

ing taxes, assessments and all other charges upon the same, including interest on the mortgage above set forth; and that at no time since the decease of said Mary L. Huntington has the defendant, Frederick G. Huntington, or Joseph W. O'Hara, his assignee, been in possession of any of said premises or collected for any of said lands, or made any repairs or improvements upon said premises, or contributed anything toward the payment of the taxes, assessments or other charges upon the same or to the interest or principal of said mortgage. The petition then states that "all of these things were done by the plaintiffs with the full knowledge and consent of the defendant, Huntington, he thereby waiving and releasing to the tenants in possession, these plaintiffs, all of his right of dower in said premises."

The petition further states that on the 29th of September, 1898, the defendant, Huntington, being insolvent, filed a deed of general assignment for the benefit of his creditors in favor of the defendant, Joseph W. O'Hara, and that the amount of liability incurred and money advanced by plaintiffs for said Huntington is very greatly in excess of the value of his dower right in the aforesaid property, which dower right plaintiffs allege "has been released to these plaintiffs as above set forth."

Plaintiffs further claim that by reason of the failure of said Huntington to maintain said premises in good repair and to pay taxes, etc., he has been guilty of waste, and thereby forfeited to the plaintiffs his right of dower in said premises.

Plaintiffs further pray that all right of dower of the defendant, Huntington, with respect to said premises may be adjudged forfeited or released to plaintiffs and their title in said premises quieted as against said Huntington and his assignee.

To this petition defendant, Joseph W. O'Hara, assignee, interposes a general demurrer.

Plaintiffs' contention that the defendant, Huntington, has forfeited his right of dower because he has been guilty of waste can not be sustained, for neither at common law nor under section 4194, R. S., could there be a forfeiture of dower interest before the dower had been assigned.

Defendants' demurrer is predicated upon the claim that the unassigned dower interest of Huntington in and to his wife's property was a freehold estate, which passed by the deed of general assignment to the assignee, and that being such freehold estate it could not be waived or released to the plaintiffs herein as claimed by them.

Plaintiffs' contention is that the unassigned dower interest of said Huntington was merely a right or chose in action, which they allege could be and was, in fact, waived and released to the tenants in possession.

It is, indeed, a difficult matter to attempt to accurately define or reconcile the cases on the subject of the exact nature of unassigned dower. In Connecticut the rule is laid down as claimed by defendant, namely, that immediately upon the death of husband or wife seized of lands there is created a freehold estate, and the dowager then becomes a tenant in common with the heirs, and that the unassigned dower interest may be conveyed as freehold estate and that the assignee of unassigned dower will hold as tenant in common with the heirs or other persons entitled to hold estate (see Wooster v. Iron Co. 38 Conn., 258).

In New York, on the contrary, unassigned dower has been held to be merely a chose in action (see Jackson v. Aspell, 20 Johns, 411).

In this state the question has not been definitely determined, but we may say that the trend of authorities is against the rule that would hold unassigned dower to be a freehold estate for life.

In Miller v. Woodsman, 14 Ohio, the court thus defines unassigned dower of wife:

"The state is an estate for life. It commences with the death of the husband * * * It ceases with the death of the wife. It is not in the power of the widow to transfer any interest in it, unless it has been actually assigned. When that power is assigned, when it is aparted and set off to her by metes and bounds, then she may sell and convey * * * not before. The right, the chose in action, if I may so speak, is not assignable. It may be relinquished to him who has the next estate of inheritance in the land out of which it is to be carved, but can not be transferred to a third person."

Indeed an unassigned dower is lacking in the most essential incidents of a freehold estate.

In Am. & Eng. Enc. of Law, Volume 5, page 906, it is said:

"It is not an estate, but a mere right of action, growing out of land—a right to have dower assigned. The widow is not seized of the land in which she has such right; she can not hold possession of such property; she has no right of entry as against the tenant; she can not maintain ejectment, sue for trespass or proceed for partition; she can not oppose the entry by husband's heirs; and in many states she need not be made a party to a proceeding against the land. She can not bargain and sell.

it at law, nor can it be seized in execution by her creditors; but she can transfer it in equity, and in equity it can be charged with her debts. She can not mortgage or lease it, but she can release it to the tenant."

According to section 5715, R. S., Ohio, "the commissioners shall, after they have set off the assigned dower, make a just and true appraisement of the whole value, after deducting necessary expenses of the real estate in which the widow or widower is entitled to dower, estimating such value from the day of filing the petition to the date of assignment of dower."

So from this it would appear that the dowager has no right to recover for the use and occupation of the land from the heirs in possession except from the date of the filing of the petition.     So I do not consider that the unassigned right of dower in Mr. Huntington was a freehold estate, the legal title of which passed to the assignee by the general deed of assignment.     Still it must, nevertheless, be considered as an interest in the real estate.

In Mandel v. McClave, 46 O. S., p. 407, the first syllabus is that "the contingent right of a wife, during her husband's life, to be endowed of his real estate at his death, is property having a substantial value that may be ascertained with reasonable certainty."   * * *

It would seem from the numerous authorities and from principle that the more reasonable rule would be to consider unassigned dower not as purely personal right, but that it is a vested property interest, transferable in equity to a stranger to the title before the same is set off by metes and bounds.     Therefore, the interest of the assignee herein is not that of a holder of the legal estate, but of the holder of an equity, having the right to proceed in equity for the enforcing of his equitable rights. This being so, we are brought to the necessity of balancing the equities herein.

It is undoubtedly true that the law indulges the presumption of an agreement on the part of the principal to indemnify his surety.     As stated in Brandt on Suretyship, section 207:

"Although surety can not, in the absence of express contract, sue principal for indemnity before he actually pays the debt, yet the implied contract for indemnity arises immediately upon the surety becoming bound."

And in Rice v. Southgate, 16 Gray, 142, it is stated:

"It is clear that the contract of the principal with his surety to indemnify him for any payment which the latter may make to the creditor, in consequence of the liability assumed,

takes effect from the time when the surety becomes responsible for the debt of the principal. It is then that the law raises an implied contract or promise of indemnity."

Now, inasmuch as there is an implied contract or promise of indemnity to the surety from the principal, it is not reasonable to presume that when the surety has in his possession property rights or assets of his principal that they are placed or left in the possession of the surety for his indemnity, which entitles him so to use them, and that thus there is created in the surety an equity superior to the equity of creditors claiming under a subsequent deed of general assignment?

If the legal title to the unassigned dower interest passes to the assignee under the general deed of assignment, we should apply the maxim that where the equities are equal, the law will prevail; but inasmuch as his freehold estate, strictly speaking, that is, the legal title to the property in question, did not, as has been shown, pass to the assignee, we must apply the equitable maxim, that where the equities are equal, that which is prior in time must prevail.

As illustrating the strength of the equity feature of the surety in such cases, an instructive case is that of Barney v. Grover, 28 Vt., p. 391, the syllabus of which is as follows:

"A surety has an equitable interest in his own indebtedness to his principal, arising from the implied contract of the principal to see him indemnified, which has relation back to the time of his becoming surety, and will prevail over any counter equity of a subsequent date.

"A person will not be holden to an assignee for a debt due from him to the assignor, if he was liable, in an equal or greater amount, to another person, as surety for the assignor, which he has since paid, though he had not at the time of the assignment."

In the opinion, page 393, the court says:

"The assignee takes the account, subject, of course, to all offsets and equitable defenses. And we think there exists in a surety an equity from the time of his assuming the relation, by the virtue of the implied undertaking, on the part of the principal. to see him indemnified. and that, although no perfected right of action accrues until actual payment. Still such payment has such reference to the original undertaking of suretyship that it overrides any equities of a subsequent date."

The defendant in his brief relies upon the proposition stated in Autcalt v. VanWinkle, 1 Green Chancery, 513:

"In an assignment by an insolvent debtor,

whatever rights he may have to the property of his wife, acquired by virtue of his marriage, lapses to the assignee."

But in this case it would seem that the question was between the assignor and the assignee and not between assignee, and parties other than an assignor claiming to have prior equities.

The conclusion reached is that under the general deed of assignment to Joseph W. O'Hara the assignee took only an equitable interest of the estate, but that there remained in the plaintiffs, Clara B. Fletcher and Florence B. English, an equity prior in point of time, which equity arises from the agreement which the law implies on the part of the principal to indemnify the surety, and the fact that said Huntington at no time from the death of his wife to the date of the assignment to O'Hara, a period of about a year, took steps to enforce his right of dower, would indicate that he desired and intended, as stated in the petition, to release his right to enforce his claim for dower in recognition of his equitable duty and obligation to indemnify the sureties.

It seems to me, therefore, that the plaintiffs have a right to demand that Mr. Huntington's dower interest be first subjected to the payment of the mortgage indebtedness to the Mutual Life Insurance Company before they are compelled to answer to said company.

The demurrer will, therefore, be overruled.

Maxwell & Ramsey, for plaintiffs.

O'Hara & Jordan, for defendants.